

OCT 2 6 2010

U.S. DISTRICT COURT
EASTERN DIST. OF MO.
ST. LOUIS

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF

HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District |  |
| --- | --- | --- |
| Name   ERIC T. TOLEN |  | Docket or Case No.: |
| Petitioner   Eric T. Tolen |  | Respondent   Dave Dormire |
| v. |  |  |
| The Attorney General of the State of Missouri |  |  |

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:
    Circuit Court of Saint Louis County, Missouri
    Division No. 15
    7900 Carbondale Ave.
    Clayton, MO  63105

    (b) Criminal docket or case number: 07SL-CR02791

2.  (a) Date of the judgment of conviction: September 15, 2008

    (b) Date of sentencing:  November 10, 2008

3.  Length of sentence:        Count 1 thru 8 = 25 Yrs
                               Counts 9 thru 14 = 10 Yrs
                               Counts 15 thru 18 = 10 Yrs
                               Counts 19 thru 32 = 10 Yrs
                               Counts 33 thru 36 = 10 Yrs
                    (each group to be served consecutive to one another)

4.  In this case, were you convicted on more than one count or of more than one crime?  Yes ☑ No ☐

5.  Identify all crimes of which you were convicted and sentenced in this case:
    Sodomy and Tampering with a witness

6.  (a) What was your plea?

    (1)  Not guilty  ☑                          (3)  Nolo contendere (no contest)  ☐

    (2)  Guilty  ☐                              (4)  Insanity plea  ☐

    (b) If you entered a guilty plea to one count or charge and not guilty plea to another count or

charge, what did you plead guilty to and what did you plead not guilty to?

   (c) If you went to trial, what kind of trial did you have?

      Jury ☑         Judge only ☐

7.     Did you testify at a pretrial hearing, trial, or post-trial hearing?

      Yes ☐         No ☑

8.     Did you appeal from the judgment of conviction?

      Yes ☑         No ☐

9.     If you did appeal, answer the following:

   (a) Name of court: Missouri Court of Appeals, Eastern District

   (b) Docket or case number: Appeal No. E.D. 92008

   (c) Result: Affirmed

   (d) Date of result: December 22, 2009

   (e) Citation to the case: 304 S.W. 3d 229 (MO. App. 2009)

   (f) Grounds raised: (1) The joining of the offenses, and in denying Tolen's motions to sever the multiple Statutory Sodomy charges; (2) The April 28, 2007 search warrant is facially invalid, in violation of the **Fourth Amendment to the United States Constitution**, in that; the April 28, 2007 Search Warrant contains no language authorizing the search for and seizure of any item, including marijuana and paraphernalia, from the locations described in the warrant; (3) This is a facially invalid search warrant case, in violation of the **Fourth Amendment to the United States Constitution**, in that both the April 28, 2007 and the August 16, 2007 search warrants do not particularly describe the thing(s) to be, or which were seized; (4) This is an exceeding the scope of the warrant case in violation of the **Fourth Amendment to the United States Constitution**, where the exceptions to the warrant requirement under the plain view doctrine is applicable, because neither the April 28, 2007 search warrant relating to Petitioner's home, or the August 5, 2007 search warrant, which described only a "lap top computer" as the item to be seized, authorized the seizure of any other items in Petitioner's home, or the trunk of

Petitioner's automobile; (5) This is a failure to enter a remedial order case to shield Petitioner from prejudice, in violation of the **Fourth, Sixth and Fourteenth Amendments to the United States Constitution**, because the State illegally seized, reviewed and photographed Petitioner's "work product" including exculpatory evidence that was obtained from the trunk of the Petitioner's automobile (during the challenged search) of August 5, 2007. And because both, the State and the trial court failed to timely return said "work product" and did not return many exculpatory documents, and as a result, the Petitioner was deprived of his right to a fair trial and to the effective representation of counsel. (**Appendix F**.)

    (g) Did you seek further review by a higher state court?    Yes ☑    No ☐

        If yes, answer the following:

        (1) Name of court: Missouri Supreme Court

        (2) Docket or case number: SC90684

        (3) Result: Application for Transfer denied.

        (4) Date of result: March 23, 2010

        (5) Citation to case: State v. Tolen, 304 S.W. 3d 229 (Mo. App. 2009)

        (6) Grounds raised: Same grounds identified in 9(f).

    (h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☑     No ☐

        If you did appeal, answer the following:

        (1)     Docket or case number: 09-11082

        (2)     Result: Petition for Writ of Certiorari denied.

        (3)     Date of result: October 4, 2010

        (4)     Citation to the case: Tolen v. Missouri, 304 S.W. 3d 229 (Mo. App. 2009)

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

    Yes ☐     No ☑

11.  If your answer to Question 10 was "Yes," give the following information:  N/A

3

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

## RELEVANT FACTS CONCERNING THE UNDERLYING CONVICTION RELATING TO ALL GROUNDS

Petitioner is a former Assistant United States Attorney from the Eastern District of Missouri from October 1987 thru April 1999, who was AV rated for more than fifteen (15) years, and licensed to practice law in the states of Missouri (MBE #33260, 1985), Kansas and Illinois. In light of his recent criminal convictions these licenses have been either suspended or disbarred.

## TESTIMONY AT TRIAL

The evidence presented at trial consisted largely of the testimony of the alleged victims as to their relationship and experiences with Petitioner during divergent periods of time, and the testimony of police officers to the items they seized at Petitioner's residence. Each of the alleged victims testified to having had consensual sexual encounters with Petitioner.

At the trial, there was no physical evidence, direct or indirectly that corroborated that any sexual act occurred between Petitioner and the purported victims, Bruce Seel, Michael Marx, Christopher Marx, Justin Braiser, and Casey Williams. Specifically, there was no forensic evidence, no eyewitness testimony, no fingerprint evidence, and no DNA evidence. In fact there was nothing but the testimony of the purported victims to substantiate any alleged sexual act(s) with the Petitioner.

Additionally, various police officers testified about items they had seized during two searches of Petitioner's residence which consisted primarily of papers and documents verifying Petitioner's

4

association with the alleged victims which substantiated their trial testimony about their [social] relationships with the Petitioner, but the testimony failed to make a sexual nexus.

## SEARCH AND SEIZURES

The police investigation of allegations made by the teenage acquaintances of Petitioner included six searches conducted pursuant to warrants issued by various judicial officers of St. Louis County, Missouri.

The four searches relevant to this Petition were as follows:

(1) **April 28, 2007**—Search of Petitioner's residence – warrant issued by Judge Schroeder on April 28, 2007 **(Appendix A)**

(2) **August 5, 2007** –Search of Petitioner's residence for a laptop computer—warrant issued by Judge Siwak on August 5, 2007 **(Appendix B)**

(3) **August 5, 2007** – Search of Petitioner's automobile for a laptop computer—second warrant issued by Judge Siwak later on August 5, 2007 **(Appendix C).** Boxes and files previously found in the vehicle and inspected by police were seized allegedly pursuant to this warrant which authorized only the seizure of the laptop computer which had already been located in Petitioner's kitchen.

(4) **August 16, 2007** – Search of hard drive of computer, previously seized in search of residence on August 5, 2007 **(Appendix D).**

## A.    The April 28, 2007 Search

A review of the search warrant issued by Judge Schroder on April 28, 2007 clearly shows that on the face of the warrant, that there was no specific insertion of language directing officers to seize any items from the Tolen home. The search warrant, which is set out in full in **Appendix A**, contains the following somewhat disjointed and incomplete language:

**WHEREAS Detective Corporal John Flanagan, DSN 71 of the Town and Country Police Department on the 28th Day of April, 2007 presented to Judge Schroder, of Division 32 of the**

**Circuit Court of the County of St. Louis, State of Missouri, his duly verified application and petition in writing as provided by law stating that the place described as:**

\*\*\*

**All vehicles found on this property.**

**All computers found on this property.**

**All safes found on this property.**

**Is being used for the purpose of secreting evidence of Rape, Sodomy and Assault on a 15 year old white male who resides at 12740 Post Oak Rd. under the guardianship of the owner and resident of 12740 Post Oak Rd., Eric Tolen who is the perpetrator of the rape, sodomy and assault and for quantities of marijuana and paraphernalia related to the use of marijuana.**

**WHEREAS, the Judge of this Court for the sworn allegations of said application and petition and from the supporting written affidavits filed therewith has found that there is probable cause to believe the allegations of the application an petition to be true and probable cause for the issuance of a search warrant herein;**

Following this language, is the command to execute the warrant within 10 days after the date of issuance and make an appropriate return, should any items, yet unidentified, be located at the place to be searched. **(Appendix A).**

No description of items believed to be evidence of a rape, sodomy, or assault are listed in the warrant. In fact, the warrant does not in any way describe what is to be seized.

The lack of particularity of the warrant was addressed during Detective Flanagan's testimony at the suppression hearing of May 9 and 16, 2008. (Motion Hearing 34, 35.)

> Q.    And that's going to leave it – if there are five officers inside of this house searching the
> Tolen residence, it's been left up to each individual officer to decide, whether or not
> something fits the criteria of sodomy-related, assault-related, or rape-related, isn't that
> right?

6

A. If the officers found something, he would notify the detectives and the detectives would determine whether it was something that could be used for the case.

Q. Okay. So it's not even the officer who finds it, who should be able to identify it immediately as something the search warrant directs them to seize. They are then going to the detective, asking the detectives, please tell me, is this what's seizable based on the warrant that we have gotten from our judge? And it now left to a detective to determine whether or not it fits within the criteria of sodomy-related, assault-related, or rape-related, is that correct?

A. Yes.

The testimony of Det. Flanagan, was that officers were in the Tolen home looking for evidence which would corroborate C.W.'s claim of being a victim of rape, sodomy and assault. (Motion T. 38.) Det. Flanagan conceded there was no direction in the warrant to seize "stolen property." However, the police seized Krugerrands and the computers based upon their belief that this property "might" be stolen property.

When asked how the currency, gold coins, computers or titles to the car were related to the specific crimes referenced in the warrant, Flanagan admitted that they were not. He testified to his belief that some of these items might have been stolen, or as in the case of the car titles, that the names were names of other people who have been associated with Petitioner. (Motion T. 8-40.)

During the August 11, 2008 suppression hearing, Sgt. Maria Gomez testified that she directed her search of Petitioner's home and safe, not exclusively upon the authorization granted by the Court pertaining to Casey Williams, but rather upon her knowledge of previous investigations. (Motion T. 75.)

Q. "That's okay. That's Okay. As I understand it you walk into Petitioner's home armed with all knowledge that you have from every other investigation that you had been involved in previous to Casey Williams, is that right?

A. Yes.

Q.   Okay. And so with that, as I understand, when you talk about seizing things like seizing

    paperwork to car titles that you describe contain Petitioner's name on them okay, you are

    seizing that based upon your knowledge of previous investigations, is that correct?

A.   That's correct.

Q.   Okay. You are not seizing them based upon some information that you have that Casey

    Williams was somehow or another involved in bartering of a vehicle for some type of

    sexual favor?

A.   No, this was open view from another investigation.

***

Q.   Okay. Primarily your reason for seizing them have to do with previous investigations

    that you have some knowledge about?

A.   Yes.

Q.   Okay. And what you think the relationship might be between some old case that you

    investigated and what you now find in Petitioner's safe in April 2007?

**A.**   Yes.

***

The Constitutional deficiencies of the April 28, 2007 search (as well as the August 5, 2007 searches)

were exhaustively briefed and argued to the lower Courts, both orally and in briefs, but the lower Court,

nevertheless admitted into evidence more than 60 exhibits consisting of items seized during this first

search.

## B.   The August 5, 2007 Search

On August 5, 2007, Judge Siwak issued two search warrants the object of which was **a** laptop

computer belonging to and utilized by Petitioner. One warrant was for the Tolen home and the other for

the Tolen Law office. Officers executed the warrant for the Tolen residence first. (07SL-MC00039).

(The search of the law office is not at issue in this Petition.) The warrant gave officers the authority to

search for only a laptop computer. (Motion T. 74.) Det. Williams also testified that prior to execution of

the warrant; the officers conducting the search were given instructions by Det. Williams at a briefing regarding the type of items that they were seeking during which he advised officers that in addition to the laptop computer, officers should look for and seize peripheral devices, evidence related to sexual abuse and tampering. (Motion T. 136-138.)

As noted on the warrant return and the testimony of Det. Williams, the first item officers seized in the kitchen with Petitioner was a blue Toshiba laptop computer. (Motion T. 146.) The object of the search had been located. However, the search did not end.

It is the extension of this search, after finding the object they were authorized to seize, which led to officers locating fifteen (15) sheets of paper with the top being labeled "Q and A" on the top of a chest of drawer located in the master bedroom. These papers, which were eventually used as the primary documentary evidence on the witness tampering charge, were found on top of an otherwise uncluttered piece of furniture at a height that would have made it difficult, if not impossible, to review the contents of the first page without removing them from the top of the chest of drawers for perusal (August 11 Hearing T. 172.)

Next officers went to the garage and opened the locked trunk of the car and rummaged through at least some of the files and papers contained in these boxes. They continued removing papers reading and then photographing those of interest. Det. Williams testified that when the question arose regarding whether authorization existed for a search of the two vehicles, it was determined by the prosecutor that another search warrant was needed to seize the boxes in the car. (Motion T. 90.)

Det. Williams stated that at approximately 9:00 p.m. on August 5, 2007, he went to Prosecutor Alizadeh's house with other detectives, and he and Ms. Alizadeh prepared another application, affidavit, and search warrant for the Tolen residence, including the vehicles on the property. (May 9, 2008, Motion T. 56 and 57.) This second August 5 search warrant authorizes the search by law enforcement for "a personal laptop computer belonging to and utilized by Eric Tolen." (October 29, 2007, T. 24.) Surprisingly, however, this second search warrant is **identical** to the first except for the addition of the words "vehicles" as the **location** to be searched. It does not list anything other than a "laptop computer"

9

as the objects to be seized. **(Appendix C.)** Of course, the laptop computer had already been found and seized and **the officers were well aware that there was no laptop computer in the trunk when they applied for the second warrant on the night of August 5, 2007. The representation that the officers believed that a laptop computer was in the trunk is simply false.**

Petitioner filed his Motion for Return of Property and on October 29, 2007 the Court held a hearing to address that issue. At the conclusion of the hearing the Court entered an Order that "the items seized from a Nissan Maxima during the execution of a search warrant on August 5, 2007, be delivered to the Court within three business days for an in-camera inspection." (L.F, Pg. 10; See also, October 29, 2007 T. 1, 30.) The Court specifically stated that it wanted to "determine whether or not there are client files whether or not there are items of evidence that would be considered as part of this case, whether or not they are subject to a Motion to Suppress, whether or not they might be discoverable." (October 29, 2007, T. 1, L.F. 18-22.)

Without any explanation as to why the property could not be immediately returned to Petitioner after the Court's in-camera inspection, the Court, on January 25, 2008, entered an Order that continued Petitioner's Motion to Return Property "so Defendant may notify St. Louis County Police Department's Property Control Unit." (L.F. Pg. 12) On May 16, 2008, approximately seven (7) months after the Court entered its Order for in-camera inspection, the Court finally acknowledged on the record that it had completed its in-camera inspections of the two boxes and that "there was nothing of evidentiary value in those boxes." (May 16, 2008 T. 99.) Although the Court notes that "I had previously indicated to counsel orally that after conducting an in-camera review… there was nothing of evidentiary valve in those boxes" the Court provides no explanation as to why the boxes were not immediately returned to Petitioner at that time. Additionally, the Court stated that the contents of the boxes will not be turned over to the State, but did not order the documents returned to Petitioner. (May 16, 2008 T. 100-101.) At the hearing the following exchange occurred between the Court and Petitioner's attorney, who tried to explain that the Prosecutor's assurance that items seized from the trunk did not solve the problem of the failure to return Petitioner's work product:

THE COURT:    If the State conducts a search and seizes nothing, and intends to introduce

nothing, there would be no basis to file a motion to suppress that search.

It may or may not be an illegal search. That may be a good law school question. But it has no – it's not an issue, because it's moot. As long as the State is representing to the Court and the Court is stating that you're not going to be allowed to introduce photographs of anything taken from the trunk, you're not going to be able to reference anything taken from the trunk, you're not going to introduce anything taken from the trunk, then the search, the motion to suppress that search is moot.

And I understand your concern, because you've got the photographs. I understand that completely.

MS. WILLIAMS: Well, I have the photographs, I have at least one, two, three, four police officers with knowledge. I have an assistant district attorney with knowledge, who's had knowledge since the night the search warrant, the second search warrant which she prepared to get – to seize this box, was actually done.

And so I guess the concern that I have is this: If it's a moot issue, as Ms. Alizadeh indicates, then I don't think it's an exercise in futility, why not confess the fact that the warrant was issued improperly? **Because the issue that's before us is that my client has personal papers that are in there, some of which – as you can see from the photograph you have there, some of which is at least some strategy on his part on how he wants this case defended that is now not in his possession and , I disagree with Ms. Alizadeh, has been seized. Because if he doesn't have control over it, it's been seized. Until he gets control back of it, it still has been seized, whether it's sitting in the Court's chambers or at the police department or Ms. Alizadeh's office.** The bottom line is, it has for Fourth Amendment purposes been seized. And so as a consequence, you know, the issue is simply, you know, -- I recognize that to beg the issue of whether the search is good or not, we say, we just won't introduce anything from it. That does not, in and of itself, cure the defect that we have here. Because the defect still is the fact that the Court still has in it possession items that were taken out of Mr. Tolen's car without, in my opinion, a valid search warrant allowing for their seizure.

And so either they get returned to him, or – I mean, because that's the difficulty here. Because there are bells around here that we cannot unring ever. There's information that's contained in the minds of a number of police officers that cannot ever be undone. And quite frankly, while that's part of the issue, the other part becomes the issue of whether or not – even with regard to just credibility of witnesses, whether or not – because with regard to that search warrant, it is prepared at a point in time that Detective Williams knows that a laptop computer had been seized from the home of Eric Tolen. Because it's the first item that police officer sees.

**And in spite of that information he prepares, with the assistance of Ms. Alizadeh, from the records, an application for search warrant, an affidavit for a search warrant, and never once informs the magistrate who's reviewing any of these documents that the computer they are looking for has been seized, that we've been in the trunk of this car. And guess what? I know there's not a laptop in there –**

THE COURT: Counsel, but we've getting into the argument about whether the search is valid or not. And I'm sure Ms. Alizadeh has a response to that, too. (Emphasis supplied.)

There were no additional orders of the Court regarding Petitioner's Motion for Return of Property until September 2, 2008 when the Court enter a somewhat confusing order stating: "the Court is to separate "client files" from non-client files. The St. Louis County Police Department and the Town & Country Police Department are each admonished to not review, photograph the contents of this box, including photographing and to return to (sic) non-client files as identified by the Court." However, it was only during the second week of Petitioner's jury trial, on or about September 12, 2008, that some items of property contained in the two illegally seized boxes were returned. (**Appendix F** - Affidavit of Eric Tolen dated October 14, 2008, L.F. 294-301.) The Court failed to return to Petitioner other files and folders of his work product, trial strategy and other documents that were contained in the two seized boxes until after Petitioner had been convicted and sentenced. Moreover, not all of Petitioner's criminal defense files were returned to him. (**Appendix F** – Affidavit of Eric Tolen, L.F. Pgs. 294-301.)

In support of his pro se Motion for New Trial, Petitioner submitted his affidavit elaborating on the August 5, 2007 search of his automobile after the officers had located and seized the laptop computer which was the object designated in the search warrant. (**Appendix F,** L.F. 294-300). The State's Attorney agreed and the Judge accepted this affidavit in lieu of live testimony by Petitioner.

The affidavit notes, and it is uncontroverted, that a large number of files related to allegations which had been made against Petitioner by the purported victims and their family members. These included files relating to Casey Williams, Justin Brasier, Taylor Kennedy, Bruce Seel, Michael Marx, and Christopher Marx. Among the specific items seized were memos to be directed to Petitioner's attorneys containing Petitioner's own recollections, proposed questions to ask of these witnesses, short letters from the witnesses recanting their allegations against him, and proposed themes and strategies in defending against the allegations made (L.F. 297-299)

The affidavit further notes, and it is uncontroverted, that these seized files and documents remained in the possession of the police or prosecutor "until the end of the second week of trial, on or about September 12, 2008," except for when they were subject to an in camera review by the Judge.

The affidavit sets out detailed descriptions of some of the specific items seized as well as the

following general description (**Appendix F**.):

My strategy, themes and research as well as proposed direct and cross-examination questions (for Petitioner's attorneys to use during the deposition of the purported victims, their family members and other anticipated witnesses. This also included my analysis of the issues contained in the criminal charges filed against me, including but not limited to the areas relating to the credibility and substantive matters and details particular to the purported victims and witnesses. In this regard, I saw myself as being co-counsel to my attorney in their representation of me. I devoted a substantial amount of time, in excess of 150 hours, in the research and analysis of issues that were reflected in the documents contained in the two (2) boxes. (L.F. 296).

The Petitioner's affidavit concludes as follows:

Based upon the direct examination of the witnesses and the theories and direction of the prosecutor' case, I feel comfortable stating that the Prosecuting Attorney had the benefit of my thought process and analysis that was clearly my work product, even though the documents themselves were not used in the trial. The prosecution team, including the police officers and investigator obtained an unfair advantage because of their illegal seizure and review of the documents that I had prepared.

### C.    The August 16, 2007 Search of Petitioner's Laptop Computer

The August 16, 2007 search warrant for the Toshiba laptop computer (**Appendix D**) does not

describe what information is to be searched or seized. A review of this warrant gives the reader a list of

how and where electronic data can/could be stored on a laptop. However, law enforcement is given no

information on what specific items are to be search for and/or seized.

Det. Wilds testified that there were no limitations on him with regard to the data to be examined on

this computer. (Motion T. 232, 233, and 240.) To narrow his search, he was given, by Detective

Williams, the name of C.W. and Martini Haynes, that he searched the computer for the name Marlin Sipe

because this was the name that is familiar to him. (Motion T. 241-242.) He also searched for the name of

John Smith. (Motion T. 239.)

In reviewing the affidavit for the warrant, there was no information which discussed or mentions

either Misters Sipe or Smith.

### USE OF THE SEIZED EVIDENCE AT TRIAL

There were eighty-four (84) Exhibits introduced into evidence by the State at trial, excluding each of

the search warrants. Of these eighty-four Exhibits, seventy-seven (77) of them were seized in the searches

discussed herein. Each of these Exhibits was objected to by Petitioner's trial counsel. Only seven (7) of the State's Exhibits were not inclusive of the seven-seven (77) seized from the search warrants. These items consisted of Exhibits 10, 80, 91, 92, 93, 94, and 95.

The trial transcript indicates that it was the State's strategy to utilize the seized evidence to corroborate and bolster the credibility of its witnesses by showing evidence of enticement; shared alone time between the Petitioner and the alleged victims; and verification of their description of Petitioner's residence.

## GROUNDS

**GROUND ONE:** This is a facially invalid search warrant case, in violation of the **Fourth Amendment to the United States Constitution**, because the April 28, 2007 search warrant contains no language for authorizing the search and seizure of **[any]** item from the locations described in the warrant. **(Appendix A).**

At the time of Petitioner's criminal trial, the U.S.Supreme Court had previously held that a search is illegal if not supported by a facially valid warrant. Further, to be valid, among other requirements, the warrant must state with particularity the place to be search and the items to be seized. **Steele v. United States**, 267 U.S. 498 (1925); **Marron v. United States**, 275 U.S. 192 (1927); and **Groh v. Ramirez**, 537 U.S. 1231 (2004).

In reaching its decision to affirm, the court below decided that these clearly established controlling Supreme Court precedents were not to be applied to the case at bar, because the court of appeals found that the April 28, 2007 search warrant authorized the "search for and seizure of" marijuana and paraphernalia related to marijuana, although no such specific language is actually contained within or on the face of the warrant. **(Appendix E)**.

The state court withheld the requisite opportunity for full and fair litigation when it / they failed to apply "the correct constitutional standard", in that (1) it / they did not base their decision on a "recognition, and at least colorable application of the correct Fourth Amendment standard; (2) it / they willfully refused to apply the appropriate constitutional standard; (3) it / they ignored controlling United

14

States Supreme Court precedent, and instead applied a test rejected by the Court; or (4) it is "inconceivable" that the state courts could have applied the correct standard to reach the conclusion they did. In addition, Petitioner was denied an opportunity for a full and fair litigation on his Fourth Amendment Exclusionary Claim. In that, Petitioner was precluded from using the State of Missouri corrective mechanism because of an unconscionable breakdown in the underlying process.

    (a)    Supporting facts: See relevant facts concerning the underlying conviction relating to all grounds.

    (b)    If you did not exhaust your state remedies on Ground One, explain why: N/A

    (c)    **Direct Appeal of Ground One:**

        (1) If you appealed from the judgment of conviction, did you raise the issue?

        Yes ☑    No ☐

    (d)    **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?  Yes ☐  No ☑

        (7) If your answer to Question (d)(1) is "No," explain why you did not raise this issue: Because the state post-conviction courts are barred from reviewing an issue that has already been determined in the court of appeals.

    (e)    **Other Remedies:** Describe any other procedure (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: None

**GROUND TWO:**  This is a facially invalid search warrant case, in violation of the **Fourth Amendment to the United States Constitution**, because neither the April 28, 2007 search warrant or the August 16, 2007 search warrant particularly described the thing(s) to be, or which were, seized. **(Appendixs A and D)** At the time of Petitioner's criminal trial, the U.S. Supreme Court had previously held that the search warrant shall particularly describe the things to be seized, making general searches under them impossible

and prevents the seizure of one thing under a warrant describing another. Further, as to what is to be taken, nothing is left to the discretion of the officer executing the warrant. **Marron v. United States**, 275 U.S. 192, 196 (1927); **Stanford v. Texas,** 379 U.S. 476, 485 (1965); **Maryland v. Garrison,** 480 U.S. 79, 84 1987); and **Groh v. Ramirez,** 540 U.S. 551 (2004).

In reaching its decision to affirm, the State court below decided that these clearly established controlling Supreme Court precedents were not to be applied to the case at bar, where the appellate court specifically held: *"Here, the April 28 warrant contained language concerning the search for and seizure of quantities of marijuana and paraphernalia related to the use of marijuana. As in **Lachterman, [State v. Lachterman,** 812 S.W. 2d 759 (Mo. App. E.D. 1991)] this language was sufficiently particular to authorize entry into Tolen's home".* (**Appendix A, See also, Appendix E - State v. Tolen 304 S.W. 3d 229 (MO. App. 2009**)

The state court withheld the requisite opportunity for full and fair litigation when it / they failed to apply "the correct constitutional standard", in that (1) it / they did not base their decision on a "recognition, and at least colorable application of the correct Fourth Amendment standard; (2) it / they willfully refused to apply the appropriate constitutional standard; (3) it / they ignored controlling United States Supreme Court precedent, and instead applied a test rejected by the Court; or (4) it is "inconceivable" that the state courts could have applied the correct standard to reach the conclusion they did. In addition, Petitioner was denied an opportunity for a full and fair litigation on his Fourth Amendment Exclusionary Claim. In that, Petitioner was precluded from using the State of Missouri corrective mechanism because of an unconscionable breakdown in the underlying process.

This ground was raised before the trial court in Petitioner's Motion to Suppress Evidence. (See – Defendant's Memorandum of Law in Support of Motion to Suppress, and Defendant's Supplemental Brief) This ground was also raised in Petitioner's Brief before the Court of Appeals. The trial court orally denied Petitioner's motion. However, this ground was ruled upon and denied by the Appeals Court. (**Appendix E**)

(a)   Supporting facts: See relevant facts concerning the underlying conviction relating to all grounds.

(b)   If you did not exhaust your state remedies on Ground One, explain why: N/A

(c)   **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise the issue?

Yes ☑   No ☐

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Yes ☐   No ☑

(7) If your answer to Question (d)(1) is "No," explain why you did not raise this issue: Because the state post-conviction courts are barred from

reviewing an issue that has already been determined in the court of appeals.

(e)   **Other Remedies:** Describe any other procedure (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: None

**GROUND THREE:** This is an exceeding the scope of the warrant case, in violation of the **Fourth Amendment to the United States Constitution**, where the exception to the warrant requirement under the plain view doctrine is applicable, because neither the April 28, 2007 search warrant relating to Petitioner's home, or the August 5, 2007 search warrant, which described only a "lap top computer" as the item to be seized, authorized the seizure of any other items in Petitioner's home or the trunk of Petitioner's automobile. (**Appendixes A, B, and C**).

At the time of Petitioner's criminal trial, the U.S. Supreme Court had previously held that police generally cannot exceed the terms of the warrant and the execution of the warrant must be related to the warrant's objective. **Marron v. United States,** 275 U.S. 192 (1927); **Wilson v. Lane,** 526 U.S. 603 (1999). This Court also held that plain view is an exception to the warrant requirement and authorizes a lawful warrant-less seizure of evidence [IF] the officers are lawfully in the place where the items are in

17

plain view [AND] the items are immediately apparent as evidence or contraband. **Horton v. California,** 496 U.S. 128 (1990); **Texas v. Brown,** 460 U.S. 730 (1983). If officers have to manipulate the object, even by minimal movement, in order for its incriminating nature to become readily apparent, it is considered to be a search beyond plain view and will [NOT] satisfy the plain view exception unless there is probable cause. **Arizona v. Hicks,** 480 U.S. 321 (1987); See also, **United States v. Zavala,** 541 F. 3d 562 (5th Cir. 2008).

Despite the clear authority of U.S. Supreme Court, the appellate court held:

> "However, as the Court held in Lachterman, where there is sufficient particularity in a warrant to support the lawful search for controlled substances, and during the search officers discover evidence of other crimes such additional evidence is properly seized". **(State v. Tolen supra)**

In reaching its decision to affirm, the court below decided that these clearly established controlling Supreme Court precedents were not to be applied to the case at bar, because it specifically chose to follow its previous decision in **Lachterman**, which was made almost 20 years ago and overruled on other grounds by the Missouri Supreme Court, and is no longer the rule of law. The **Lachterman** holding requires no analysis by the lower court of the plain view exception on the warrant requirement. This is in direct conflict with this Court's decisions relating to unlawful general searches as well as similarly established Missouri cases.

The state court withheld the requisite opportunity for full and fair litigation when it / they failed to apply "the correct constitutional standard", in that (1) it / they did not base their decision on a "recognition, and at least colorable application of the correct Fourth Amendment standard; (2) it / they willfully refused to apply the appropriate constitutional standard; (3) it / they ignored controlling United States Supreme Court precedent, and instead applied a test rejected by the Court; or (4) it is "inconceivable" that the state courts could have applied the correct standard to reach the conclusion they did. In addition, Petitioner was denied an opportunity for a full and fair litigation on his Fourth Amendment Exclusionary Claim. In that, Petitioner was precluded from using the State of Missouri corrective mechanism because of an unconscionable breakdown in the underlying process

This ground was raised before the trial court in Petitioner's Motion to Suppress Evidence. (See – Defendant's Memorandum of Law in Support of Motion to Suppress, and Defendant's Supplemental Brief) This ground was also raised in Petitioner's Brief before the Court of Appeals. The trial court orally denied Petitioner's motion. However, this ground was ruled upon and denied by the Appeals court. **(Appendix E.)**

      (a)    Supporting facts: See relevant facts concerning the underlying conviction relating to all grounds.

      (b)    If you did not exhaust your state remedies on Ground One, explain why: N/A

      (c)    **Direct Appeal of Ground One:**

          (1) If you appealed from the judgment of conviction, did you raise the issue?

          Yes ☑    No ☐

      (d)    **Post-Conviction Proceedings:**

          (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Yes ☐  No ☑

          (7) If your answer to Question (d)(1) is "No," explain why you did not raise this issue: Because the state post-conviction courts are barred from reviewing an issue that has already been determined in the court of appeals.

      (e)    **Other Remedies:** Describe any other procedure (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: None

**GROUND FOUR:**    This is a failure to enter a remedial order case to shield Petitioner from prejudice, in violation of the **Fourth, Sixth and Fourteenth Amendments to the United States Constitution**, and a **Brady violation** case because the State illegally seized, reviewed and photographed Petitioner's "work product" that was obtained from the trunk of the Petitioner's automobile (during the challenged search) of August 5, 2007. And because both, the State and the trial court failed to timely

return said "work product" and did not return many exculpatory documents at all, and as a result, the Petitioner was deprived of his right to a fair trial and to the effective representation of counsel. (Appendix F.)

At the time of Petitioner's criminal trial, the U.S. Supreme Court had previously held that where there is prosecutorial misconduct, the appropriate remedy is not to dismiss the indictment, but rather to fashion a remedial order to shield the defendant from prejudice resulting from the government's intrusion. **United States v. Morrison,** 449 U.S. 361, 366 (1981). The Supreme Court had also held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process, [w]hen the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." **Brady v. Maryland**, 373 U.S. 85, 87 (1963).

In reaching its decision to affirm, the court below decided that these clearly established controlling Supreme Court precedents were not to be applied to the case at bar, where it very lightly dismissed Petitioner's contentions without examining the affidavit which Petitioner submitted with his Motion for New Trial, by stating:

> "Moreover, there was no evidence that Tolen's attorneys were unable to prepare his defense absent the material seized from his trunk, or that the defense was forced to proceed differently as a result of the retention of the documents. As a result, *although we question the decision of the court in not returning the documents to Tolen prior to trial*, Tolen's right to a fair trial was not violated by the trial court's failure to order the files returned to him. Point three is denied". **(Appendix A. pp 6 & 7)**

Under the due process clause to the Fourteenth Amendment of the United States Constitution, criminal prosecutions must comport with prevailing notions of fundamental fairness. This standard of fairness is interpreted to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. **California v. Trombetta,** 467 U.S. 479, 484 (1984); **United States v. Valenzuela-Bernal,** 458 U.S. 858, 867 (1982).

It is respectfully submitted that the criteria applied should not be; whether Petitioner's attorneys "were unable to prepare his defense" or that he "was forced to proceed differently", but whether the State's seizure, review, photographing and retention of the files along with the court's refusal to order

their return, affected in any respect, the Petitioner's ability to prepare and present his defense. Petitioner's affidavit clearly establishes that he was impeded and prejudiced by the illegal seizure and retention of his files and "work product" for more than a year prior to his trial. Moreover, Petitioner has never received back from the State all of his criminal defense materials, including but not limited to the exculpatory evidence contained in the numerous recantation statements made by the purported victims. (**Appendix F.**)

The state court withheld the requisite opportunity for full and fair litigation when it / they failed to apply "the correct constitutional standard", in that (1) it / they did not base their decision on a "recognition, and at least colorable application of the correct Fourth Amendment standard; (2) it / they willfully refused to apply the appropriate constitutional standard; (3) it / they ignored controlling United States Supreme Court precedent, and instead applied a test rejected by the Court; or (4) it is "inconceivable" that the state courts could have applied the correct standard to reach the conclusion they did. In addition, Petitioner was denied an opportunity for a full and fair litigation on his Fourth Amendment Exclusionary Claim. In that, Petitioner was precluded from using the State of Missouri corrective mechanism because of an unconscionable breakdown in the underlying process

ı     This ground was raised before the trial court in petitioner's Motion to disqualify the State Prosecutor and Motion for Return of Property. It was also raised during a court hearing on Petitioner's Motion to Suppress. (See – Oct. 29, 2007 Transcript; and May 9 & 16, 2008 Transcript) This ground was also raised in Petitioner's Brief before the Missouri Court of Appeals. The trial court denied said motions but entered several orders relating to Petitioner's property. This ground was ruled upon and denied by the Missouri Court of Appeals.

    (a)    Supporting facts:

    (b)    If you did not exhaust your state remedies on Ground Two, explain why: N/A

    (c)    **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise the issue?

        Yes ☑     No ☐

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Yes ☐    No ☑

(7) If your answer to Question (d)(1) is "No," explain why you did not raise this issue: Because the state post-conviction courts are barred from

reviewing an issue that has already been determined in the court of appeals.

(e)    **Other Remedies:** Describe any other procedure (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: None

13.  Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? Yes ☑    No ☐

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reason for not presenting them: N/A

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ☐    No ☑

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? Yes ☐    No ☑

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)    At preliminary hearing:        John Pleban MBE #24190
                                      Lynette M. Petruska MBE #41212
                                      2010 South Big Ben Blvd.
                                      St. Louis, MO 63117
                                      (314) 645-6666

(b)    At arraignment and plea:       Same

(c)    At trial:                      Cassandra M. Williams MBE #60328
                                      Patricia L. High  MBE #60324

500 N. Walker Ave.
Oklahoma City, OK  736102
(405) 272-4758

(d)   At sentencing:          Same

(e)   On appeal:              Lawrence J. Flemming
                              100 N. Broadway, 14th Floor
                              St. Louis, MO  63102-1876
                              (314) 231-6700

(f)   In any post-conviction proceeding: No.

(g)   On appeal from any ruling against you in a post conviction proceeding:

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you

are challenging?     Yes □       No ☑

18.  **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago,

you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does

not bar your petition.*

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. §

2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for writ of habeas corpus by a
person in custody pursuant to the judgment of a state court. The limitation period shall run from the
latest of –                                                                          (continued…)

Therefore, petitioner asks that the Court grant the following relief: Discharge from state confinement, or

any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and

that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____

(month, date, year).

23

Executed (signed) on ⟨October 22, 2010⟩(date).

Signature of Petitioner

*(...continued)

> (A) the date on which the judgment became final by the conclusion of review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending shall not be counted toward any

period of limitation under this subsection.

If the person is not petitioner, state relationship to petitioner and explain why petitioner is not signing this

petition.

## IN FORMA PAUPERIS DECLARATION

United States District Court for the Eastern District of Missouri

\* \* \* \* \*